Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

---

### CL-2023-0544

---

### Reginald Hunter

### v.

### Jessica Trammer Allen

### Appeal from Autauga Circuit Court
### (DR-21-900096)

HANSON, Judge.

Reginald Hunter ("the father") appeals from a paternity judgment entered by the Autauga Circuit Court[1] in April 2023 that, among other

---

[1] Brock v. Herd, 187 So. 3d 1161, 1164 (Ala. Civ. App. 2015), holds that Alabama circuit courts may properly adjudicate matters concerning the parentage of children born to unmarried parents.

things, determined that the father is the biological father of a child, R.M.T. ("the child"), born in January 2020 to Jessica Trammer Allen ("the mother") during her marriage to Zachary Allen ("the former husband");[2] awarded the mother and the father joint legal custody of the child and the mother sole physical custody of the child pursuant to the parents' stipulation; set forth visitation provisions with respect to the father; and awarded the mother monthly child support and retroactive child support. The following are the pertinent provisions of the trial court's judgment challenged by the father in his postjudgment motion and by his new counsel on appeal:

> "… The [f]ather shall be permitted to visit with the … child on the fourth (4th) weekend of each month in the Prattville-

---

[2]Although the former husband was joined as a party by the trial court and is listed on the notice of appeal as an appellee, he disclaimed parentage of the child both in his filings in the trial court and testimony at trial; further, the father raises no issue that affects the former husband's rights or interests, nor has the former husband filed an appellate brief. Accordingly, we do not treat the former husband as an appellee, and the style of the appeal has been amended accordingly. See State Farm Mut. Auto. Ins. v. Pettway, [Ms. CL-2023-0501, Mar. 29, 2024] ___ So. 3d ___, ___ n.2 (Ala. Civ. App. 2024) ("State Farm has not made any argument that the order appealed from was entered in favor of Horne. … The appellees' brief was filed on behalf of [two other parties] …. Accordingly, we do not treat Horne as an appellee … and we have amended the style of the appeal."). However, to ensure clarity, we will refer in this opinion to the father and the mother collectively as "the parents" rather than as "the parties" because of the former husband's status as a party in the trial court.

2

Montgomery area. His visits shall begin on the fourth (4th) Friday of the month at the time the child is released from school and continue until the following Sunday at 5:00 p.m. If the [f]ather is unable to pick up the … child from school at the time school is released, the [m]other should be notified as soon as practical to arrange for other transportation.

"When the [f]ather has exercised visits consistently enough to build a stable relationship with the … child, and the … child has reached a suitable age for cross-country travel, the father may petition this [c]ourt for a revised visitation schedule in the best interests of the … child given the facts and circumstances at that time.

"….

"… The [parents] each submitted a [Form] CS-41 [Child Support-Obligation Income Statement/Affidavit] during the trial of this cause, which shall be used for the calculation of child support consistent with Rule 32 of the Alabama Rules of Judicial Administration. Accordingly, the [f]ather shall pay to the [m]other child support in the amount of $741.00 each month beginning [May 1, 2023].

"… [T]he [f]ather shall pay to the [m]other the sum of $4,004 for retroactive child support based on his changed income during pendency of the case. This amount is pursuant to the [parents'] Pendente Lite Agreement ratified by [c]ourt [o]rder on April 21, 2022, which included a child-support recalculation to take effect May 1, 2022 based on the [parents' Forms CS-41] filed at that time. The amount of $4,004 was calculated by subtracting the amount of support paid ($377.00) from the amount of child support due to the [m]other ($741.00) and applying this amount owed from May 1, 2022 through April 30, 2023, at which time the … child support amount [specified in the previous paragraph] shall go into effect."

(Emphasis added.)

3

The record reflects that, while separated from but still legally married to the former husband, the mother conceived and gave birth to the child, and has resided in Autauga County with the child since the child's birth. Although the mother initially sought dismissal of the father's paternity action on the basis that the former husband was the child's presumed father, the former husband expressly disclaimed parentage of the child, and the mother and the father stipulated at trial on April 17, 2023, that the father was the child's biological father. The parents further stipulated to the mother's having physical custody of the child and to the setting of a child-support obligation consistent with the guidelines set forth in Rule 32, Ala. R. Jud. Admin., but could not agree on visitation matters.

The father testified to being a California resident who was scheduled to be married to a nonparty in September 2023; in addition to the child at issue in the paternity action, the father has two additional children that live with him, along with his fiancée, and the fiancée's brother, in a three-bedroom home acquired by the fiancée. The father testified that he was seeking immediate visitation with the child in San Diego, California, or, in the alternative, visitation at that location once

4

the child had reached the age of five years; however, he admitted that, because of his having exhausted his work leave, he would be unable to visit with the child during the remainder of 2023. Nevertheless, the father requested visitation awards of, among other things, eight continuous weeks in the summer and two weeks during the spring. The mother, for her part, testified that she had had "no interest" in the child's leaving Alabama because, she said, the father had stated to her upon learning of the mother's pregnancy with the child that she "should get an abortion" because he "did not want to have anything to do with [the] child." She added that the father had spent no more than a day with the child since the child's birth, including no overnight visits. The mother requested that the trial court "award a reasonable amount of visitation here in Alabama" until all persons involved (including the child) had become acclimated to visitation, adding that the child had not even been able to avoid crying during the mother's routine daily child-care drop-offs as of the date of trial.

> "A trial court has broad discretion when making a determination as to the visitation rights it will award a noncustodial parent. Once an ore tenus hearing is held and the visitation rights are determined, the decree is presumed correct. Further, absent a finding that the decree is unsupported by any credible evidence and is plainly and palpably wrong, we will affirm.

5

> "We note that each case involving a noncustodial parent and his or her visitation rights requires an examination of the facts and circumstances of the individual situation. However, our review of the trial court's order following the ore tenus hearing does not allow us to substitute our judgment for the judgment made by the trial court. Implicit in the presumption of correctness we attach to the decree is our recognition that the trial court was able to personally observe the litigants and witnesses."

Andrews v. Andrews, 520 So. 2d 512, 513 (Ala. Civ. App. 1987) (citations omitted). The father's appellate brief criticizes the provision of trial court's judgment ordering that the three-and-a-half-year-old child should visit with the father in the area of the child's residence until a stable relationship with the child has formed and the child reaches a suitable age for transcontinental travel; he assails the judgment as incorporating an impermissible "territorial restriction" or his right visitation. Not only did the father not raise this argument in the trial court, barring its consideration here (see Casey v. Casey, 283 So. 3d 319, 329 (Ala. Civ. App. 2019)), he relies upon caselaw concerning custodial parents' efforts to permanently relocate with their children that is inapplicable to this factual and legal setting. We perceive no basis to disturb the trial court's determination that the best interests of the child,

6

who has not even entered primary school, will be furthered by initially limiting the father's visitation to the child's home region.

The father's remaining arguments touch and concern the propriety of the $4,004 child-support award with respect to the period between May 1, 2022, and May 1, 2023. In addition to insisting that the award itself was erroneous, the father contends that the trial court, to the extent that he challenged the award in his postjudgment motion, erred to reversal in allowing that motion to be denied pursuant to Rule 59.1, Ala. R. Civ. P., by operation of law.

The record reveals that a pendente lite hearing was held on August 5, 2021, at which time the mother and the father entered into an agreement that, among other things, provided that the father should pay child support in the amount of $377 per month to the mother as of that month, an amount that, the parents agreed, was in compliance with Rule 32, Ala. R. Jud. Admin. At that time, the mother filed a Form CS-41 "Child Support-Obligation Income Statement/Affidavit" indicating monthly income of $1,900 and the father filed a Form CS-41 indicating that his monthly income should be imputed at a rate of $2,253 per month based upon the prevailing minimum wage in the state of California, with

neither party claiming child-care or health-insurance expenses at that time. The trial court ratified that agreement.

Subsequently, on April 21, 2022, the mother and the father entered into another pendente lite agreement pursuant to which the parents agreed to file new Forms CS-41 by the following day "in order to recalculate a child support payment consistent with Rule 32 of the Alabama Rules of Judicial Administration beginning with the May 1, 2022 payment," and the trial court entered an order directing that "[t]he revised child support amount shall take effect beginning May 1, 2022 and continue each month thereafter until further [o]rder of" the trial court. Both the mother and the father filed a Form CS-41 in compliance with the April 21, 2022, agreement and order; however, neither the parents nor the trial court filed a Form CS-42 "Child-Support Guidelines" statement setting forth a recalculated pendente lite child-support obligation. Notwithstanding the father's having secured employment generating a monthly income of $4,315-- employment that he had not had at the time of the trial court's ratification of the parents' August 2021 agreement -- the father admitted at trial that he had continued to pay only $377 per month in child support to the mother between May 2022 and the date of trial. Although the father contends in his appellate brief

8

that, had his child-support obligation been recalculated as of May 1, 2022, he would have owed $552 per month because the mother's Form CS-41 filed at that time had reflected a monthly income of $5,826, he overlooks his claimed monthly work-related child-care costs of $1,200 (reducible to a maximum of $643 per month pursuant to Rule 32(B)(8), Ala. R. Jud. Admin.), his monthly health-care-coverage costs of $199, and the mother's monthly health-care-coverage costs of $354; considering those figures in connection with the parents' incomes, the father would actually have owed $780 per month in pendente lite child support starting in May 2022 had the trial court responded to the parents' income-statement filings in April 2022. However, that court did not so respond. It made "no conclusive assessment" of the amount of pendente lite support due to be paid given the parents' changed incomes and obligations, and thereby effectively failed to award any pendente lite support going forward from May 2022. See Wood v. Gibson, 341 So. 3d 1101, 1104 (Ala. Civ. App. 2021) (holding that order directing parent to "pay child support in accordance with Rule 32, Ala. R. Jud. Admin.," but that "failed to specify the amount of child support to be paid" did not dispose of the issue so as to support an appeal).

At trial, the father filed a new Form CS-41 indicating that his monthly income was $4,315, and he verified at trial that that figure was correct. On cross-examination by counsel for the mother, however, the father admitted that he had continued to pay the mother $377 per month in child support and that, because that amount had been determined "based on [his] imputed at minimum wage income, then that [i.e., the father's child-support obligation] would be due to be recalculated." (R. 21) Trial counsel for the father did not object to that evidence, and, as we have noted, the trial court included in its judgment a $4,004 retroactive award to the mother respecting the period between May 2022 and May 2023, during which the mother had received only $377 per month instead of the $741 per month obligation set forth in the Form CS-42 filed by the mother and adopted by the trial court in its final judgment.[3]

The father concedes in his appellate brief that, under Brown v. Brown, 719 So. 2d 228 (Ala. Civ. App. 1998), a trial court can award sums in the nature of retroactive child support in the absence of a pendente lite

---

[3]That figure took into account the mother's declared income of $7,493 per month, her work-related child-care costs of $520 per month, and her pro rata health-care-coverage expenses for the child of $209 per month as disclosed in her April 17, 2023, Form CS-41. Aside from his monthly income, the father did not provide any other information in his April 17, 2023, Form CS-41.

support award. However, he asserts that the trial court's judgment, to the extent of its $4,004 award, was a "modification" of his child-support obligation that, he says, could properly have been ordered only in response to a direct written or oral request seeking such a "modification" or in response to trial of that issue by consent. The caselaw relied upon by the father, however, speaks only to a trial court's authority to modify a previous <u>final judgment</u> awarding child support (<u>State ex rel. Thompson v. Thompson</u>, 586 So. 2d 7, 8 (Ala. Civ. App. 1991) (reversing prospective modification of earlier final judgment); <u>Nauditt v. Haddock</u>, 882 So. 2d 364, 366 (Ala. Civ. App. 2003) (opinion of Crawley, J., with four judges concurring in the result) (affirming judgment that, among other things, declined to modify earlier judgment as to parent's child-support obligation)). In contrast, no such prior final judgment involving the parents had been entered in this case.

Here, the trial court, although initially having expressly directed the father to make monthly child-support payments of $377 on an interlocutory basis, abrogated that pendente lite obligation by first determining, in its April 21, 2022, order, that the parents were to immediately file new Forms CS-41 and that a "revised child support amount [would] take effect beginning May 1, 2022," but, thereafter,

neglected to "conclusively assess" the father's new pendente lite support obligation in a new interlocutory order responsive to the parents' filings. Although we recognize that the trial court sought to correct that oversight in its final judgment by directing the father to, in effect, pay $741 per month as of May 2022, a figure that was based upon the parties' Form CS-41 submissions in connection with the April 2023 trial, the record is all but silent regarding the parties' income and expenses pertinent to calculating child support from May 2022 until the time of trial (a period in which the mother's monthly income increased from $5,826 to $7,493); further, as we have noted, a proper calculation of the pendente lite support due from the father as of May 2022 would actually have been $780 if one assumes the veracity of the parties' April 2022 Forms CS-41.  Because, as the father correctly notes, a reviewing court should not be compelled to "guess at" the factual basis for a particular child-support award, see Willis v. Willis, 45 So. 3d 347, 349 (Ala. Civ. App. 2010), we cannot conclusively determine that the father's postjudgment motion, which requested a hearing that was due to have been afforded him as of right pursuant to Rule 59(g), Ala. R. Civ. P., was without probable merit so as to render its denial without holding that hearing harmless.  See Wicks v. Wicks, 49 So. 3d 700, 701 (Ala. Civ. App.

2010) (explaining that denial of postjudgment motion without holding a requested hearing should not be affirmed if that denial was not harmless).

For the reasons stated herein, we affirm the trial court's judgment as to visitation, but we reverse the trial court's denial of the father's postjudgment motion by operation of law and remand the cause for a hearing to be held on that motion to the extent that it challenged the retroactive component of the child-support award to the mother.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards, Fridy, and Lewis, JJ., concur.